UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

READY STAFFING, INC.,

     Plaintiff,

v.                                 CASE NO.:  6:01-CV-962-ORL-31DAB

JOHN T. MONTANARO, DAWN M.
LOUGHREY, STAFFING AMERICA,
INC. and LABOR TEMP USA, INC.,

     Defendants.

_____/

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION

NOW COMES Plaintiff Ready Staffing, Inc. ("Ready Staffing"), and in support of its Motion for Temporary Restraining Order and for Preliminary Injunction states as follows:

### INTRODUCTION

Plaintiff Ready Staffing is engaged in the temporary staffing business, generally placing temporary employees such as skilled and semi-skilled laborers on jobs with contractors and light industrial manufacturing customers to supplement the contractors' regular workforce. On August 21, 2001, Ready Staffing brought this action against John Montanaro and a business for which he was sole officer and director, Labor Temp USA, Inc. ("Labor Temp"). Plaintiff sought preliminary injunctive relief against Montanaro and Labor Temp for engaging in competition with Ready Staffing in Florida in violation of Mr. Montanaro's Noncompetition Agreement. The Court set a hearing on preliminary injunctive relief for October 15, 2001 on Plaintiff's initial Motion in this action. **In apparent retaliation for this action, upon being served with papers Defendant Montanaro sought out Plaintiff's largest customer and offered that customer a substantial reduction from Ready Staffing's invoices if the customer would take its business from Ready Staffing and give it to Montanaro and his new company, Staffing America, Inc.** As a result of this and other unlawful conduct by Defendants since the filing of this action, Plaintiff files this amended complaint and now seeks a temporary restraining order as well as preliminary injunctive



14

relief.

At about the time this action was initially filed, Montanaro and his Labor Temp business disappeared: the phones were disconnected, the Orlando office and equipment sold, and the registered agent could not be found. On about August 27, 2001, however, Plaintiff learned that Defendant Montanaro in fact was continuing his temporary staffing business at the same address in Pompano Beach where he had conducted business as Labor Temp in direct competition with Ready Staffing, but had simply changed the telephone number and name to Staffing America, Inc. ("Staffing America"). (Staffing America's principal office in Florida is located in Sanford; the company is a Georgia corporation that does not appear to be qualified at present to do business in Florida.)

Not only has Montanaro continued to engage in direct competition with Ready Staffing in violation of his Noncompetition Agreement, he has hired away a former Ready Staffing a salesperson, Dawn Loughrey, who also has an employment agreement with Ready Staffing that prohibits her from competing with Ready Staffing within a 50-mile radius of the Fort Lauderdale Ready Staffing office where she was located.  Ms. Loughrey has been violating not only the noncompetition provisions, but also the nonsolicitation and confidentiality provisions of her employment agreement, to the benefit of John Montanaro and Staffing America.

In view of the risk of further evasive action by Montanaro, and the heightened threat of irreparable injury to Ready Staffing from the combined unlawful actions of Loughrey and Montanaro, Ready Staffing moves the Court for a Temporary Restraining Order and thereafter, a Preliminary Injunction.

The restrictive covenants in Defendant Loughrey's Employment Agreement are the same in their scope and duration as restrictive covenants which have recently been held valid, reasonable and enforceable in two actions before the U.S. District Court for the Middle District of Florida, Tampa division, and in an action before the U.S. District Court for the Southern District of Florida.  Copies of the orders and the restrictive covenants at issue in those cases are attached.

-2-

## JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. § 1332 to enforce the Noncompetition Agreement of John Montanaro and the Employment Agreement of Dawn Loughrey, because the amount in controversy exceeds $75,000 and the dispute is between citizens of different states. Exhibit "A" (UBR of Ready Staffing, Inc.).   Venue is proper in this judicial district and division because all defendants reside in Florida and Defendants Labor Temps and Staffing America have their principal place of business in this judicial district and division, and Defendant Montanaro maintains an address in this district and division.

## STATEMENT OF THE CASE

On or about December 1, 1997, LDAR, Inc. d/b/a Ameri-Temps USA, and John T. Montanaro and James W. Runyon individually as the sole shareholders of LDAR, Inc., entered into an asset purchase transaction by which Ready Acquisition Corp. ("Ready Acquisition") of Kentucky acquired substantially all of the assets of LDAR.  Exhibit "B;" Exhibit "C."  LDAR was a Florida corporation engaged in the temporary staffing business throughout Florida, with its principal place of business in Fort Lauderdale operated by Defendant Montanaro.  Exhibit "B;" Exhibit "D."  After the acquisition Montanaro became employed with Ready Acquisition and then its successor, Ready Staffing, Inc.[1] until July 15, 1999.  LDAR was dissolved.  Exhibit "E."

Ancillary to the asset purchase transaction, Defendant Montanaro entered into a "Noncompetition Agreement" containing restrictive covenants, as required by the Asset Purchase Agreement and a condition precedent to closing of the asset purchase transaction.  Exhibit "B" Art. IV ¶ 4.3 (h); Art. X ¶ 10.3; Exhibit "C;" Exhibit "G."  The Noncompetition Agreement entered into by Defendant Montanaro provides in pertinent part that he shall not engage in competition with Ready Acquisition in the temporary staffing business in Florida for five years, and also shall not

---

[1]In June of 1999, Ready Acquisition was merged with and into Ready Staffing, Inc., a Kentucky corporation with its principal place of business at the same address.  Exhibit "F."  Ready Staffing is thus the corporate successor by merger to Ready Acquisition and to the rights of Ready Acquisition resulting from the 1997 asset purchase of LDAR.

solicit or employ employees of LDAR at the time of the acquisition (which included Dawn Loughrey), or solicit employees of Ready Acquisition or its successors or assigns. Exhibit "G." Following the acquisition transaction, Montanaro was employed with Ready Acquisition and then Ready Staffing until about July 15, 1999.[2]

Dawn Loughrey was also employed by Ameri-Temps prior to the asset purchase transaction, as both a clerical employee and a salesperson, operating out of the Ameri-Temps Fort Lauderdale offices. Exhibit "R." Following the asset purchase transaction she continued her employment with Ready Acquisition for a time, then left to work elsewhere. In December of 1999 she returned to Ready Staffing as a salesperson operating out of the Ready Staffing Fort Lauderdale office. She also entered into an Employment Agreement at that time, containing noncompetition, nonsolicitation and confidentiality provisions including a prohibition on competing with Ready Staffing within a 50-mile radius of the Fort Lauderdale Ready Staffing office for one year following her separation from Ready Staffing. Exhibit "N."

In the meantime, in 1999 and 2000, preparations were made and operations commenced for a temporary staffing business by the name of Labor Temp USA, Inc., with its principal place of business in Orlando. Magic City Diner, a Florida corporation with its sole director Anthony Oliveri and located on highway 17-92 in Longwood, Florida, was converted by amendment of the articles of incorporation to Labor Temp USA with its sole director first James Knepper, and subsequently in October of 2000, with its sole director John Montanaro. Exhibit "H;" Exhibit "I;" Exhibit "J;" Exhibit "K;" Exhibit "P." On about May 16, 2001, Labor Temp USA, Inc. filed its 2001 uniform business report with the Florida Secretary of State, also identifying Defendant Montanaro as the sole director and identifying no officers of the corporation. Exhibit "L."

Beginning about 1999, Labor Temp engaged in the business of temporary staffing through

---

[2]Montanaro's employment was pursuant to an employment agreement which also contained separate noncompetition covenants. That employment agreement was entered into contemporaneously with the asset purchase and the Noncompetition Agreement ancillary to the asset purchase.

Labor Temp offices located at Orlando, Tampa and Pompano Beach; since late 2000, John Montanaro has been engaged in the business of temporary staffing as sole director of Labor Temp and in 2001 as branch manager for the Labor Temp office at 447 South Cypress Road, Pompano Beach, Florida. Exhibit "L;" Exhibit "M." Although Labor Temp in August of 2001 apparently sold certain assets and leases in Orlando to a company doing business as Bayside Staffing, Labor Temp continues its existence as a Florida corporation and has not been merged with any other entity. Exhibit "Q."

In about mid-August of 2001, however, John Montanaro changed the telephone number and changed the business name of the office in Pompano Beach from Labor Temp to Staffing America, but continued to engage in the temporary staffing business from that address in direct competition with Ready Staffing. Staffing America, Inc. is a Georgia corporation that does not appear at present to be qualified to do business in Florida; upon information and belief, its principal office in Florida is in Sanford, Florida. Anthony Oliveri is an officer of Staffing America. Exhibit "O."

In about late July of 2001, Montanaro also lured away Dawn Loughrey from Ready Staffing and hired her as a salesperson at Labor Temp and/or Staffing America in Pompano Beach. Since that time, Ms. Loughrey has been engaged in sales and servicing activities in the temporary staffing business in direct competition with Ready Staffing, for the benefit of John Montanaro and his business partners. Loughrey has used and disclosed confidential business information of Ready Staffing (such as contact information, pricing and financial information, and employee skills and pay rate information) in her activities in violation of her restrictive covenants with Ready Staffing, has solicited important Ready Staffing customers and obtained business from Ready Staffing customers out of the Fort Lauderdale branch office in violation of her restrictive covenants with Ready Staffing, and solicited and employed Ready Staffing temporary employees out of the Labor Temp/Staffing America office in Pompano Beach in violation of her restrictive covenants with Ready Staffing. Exhibit "R;" Exhibit "S;" Exhibit "T."

On about August 31 or September 4, upon being served with the summons and related papers in this action, Montanaro traveled from his Pompano Beach office to the Coconut Grove jobsite of Ready Staffing's largest customer nationwide, McCann.  In apparent retaliation against Plaintiff for the bringing of this action, Montanaro offered McCann a 10 percent reduction from Ready Staffing's invoices if McCann would move its temporary staffing business from Ready Staffing to Montanaro and Staffing America.  McCann's jobsites are located  at the Ritz-Carlton in Coconut Grove and a second future Ritz-Carlton location in Miami Beach.  Montanaro's actions with Ready Staffing's largest customer threaten substantial and irreparable injury to Ready Staffing.  Exhibit "X."

Ready Acquisition and/or Ready Staffing have engaged in the temporary staffing business throughout the state of Florida continuously since the asset purchase transaction, in some cases at the same office location acquired from LDAR and John Montanaro.  Exhibit "M;" *see also* www.readystaffing.com.  The branch offices of Ready Staffing include offices in Orlando, Fort Lauderdale, Sanford and Tampa, Florida.

Ready Staffing's affiliated company, All Trades Direct, Inc., recently has had cause to bring actions for temporary restraining order and preliminary injunctive relief in the U.S. District Court for the Middle District of Florida, Tampa Division, and in the U.S. District Court for the Southern District of Florida.  The restrictive covenants at issue in these three cases are substantially the same as the material terms in the Employment Agreement of Dawn Loughrey.  Permanent Injunctions have been entered by the U.S. District Court for the Middle District of Florida on in two of those cases, see Exhibit "U," Exhibit "V," and a temporary restraining order and subsequent preliminary injunction was entered by the Southern District of Florida on the third case, *see* Exhibit "W."  In the case pending in the Southern District of Florida, *All Trades Direct, Inc. v. Martin Barnes et al.*, the restrictive covenants are identical to those contained in Dawn Loughrey's Employment Agreement.  Exhibit "W."

## DEFENDANTS HAVE VIOLATED VALID AND ENFORCEABLE STATUTORY, CONTRACTUAL AND COMMON LAW OBLIGATIONS

### A.  John Montanaro's Noncompetition Agreement is Reasonable and Enforceable.

Courts have long permitted and found enforceable, both under the common law and by statute, noncompetition covenants ancillary to the sale of a business, even in jurisdictions which look with disfavor upon restrictive covenants concerning the employment relationship.  The sound reasons behind this longstanding jurisprudence have been articulated by the U.S. Court of Appeals for the Seventh Circuit:

> A covenant to a purchaser serves to preserve the value of what the purchaser has bought, while a covenant to an employer serves to protect information or relationships that the employee might acquire by virtue of the fact that the employer hired him.  The purchaser of a business has an interest in preserving the goodwill that he purchases (which may include clientele in some cases), particularly in a service industry.  A covenant to a purchaser also poses a lesser threat of restraining trade or competition because the seller has bargaining power that a typical incoming at-will employee would not be expected to have.  Indeed, covenants to a purchaser were the first restrictive covenants allowed at common law, in recognition of the catalytic role such covenants play in promoting the transferability of property, thus enhancing trade and competition.

*Business Records Corp. v. Lueth*, 981 F.2d 957, 959-960 (7th Cir. 1992) (internal citations omitted).

These principles long have been recognized and applied in both Florida and Kentucky[2/] to enforce

---

[2/]The conduct in breach of the Noncompetition Agreement giving rise to this action occurred in Florida, and the location of the business sold to Ready Staffing to which that Agreement is ancillary also is in Florida.  In addition, the non-contractual claim for relief for tortious interference is plainly governed by Florida law.  However, the Noncompetition Agreement has no provision for where disputes are to be brought, but does provide that it shall be governed by and construed under the laws of the Commonwealth of Kentucky.  Exhibit "G" 4.3.  If the Court therefore should consider applying Kentucky law to the Noncompetition Agreement, as shown below the application of Kentucky law to this matter would require the same finding as under Florida law that the Noncompetition Agreement is reasonable and enforceable and that injunctive relief is appropriate and necessary.

Similarly, the conduct in breach of Loughrey's Employment Agreement giving rise to this action, and Loughrey's prior employment with Ready Staffing, occurred in Florida.  If, however, the Court should consider applying Kentucky law to the restrictive covenants of Loughrey here, application of Kentucky law to this matter would require the same finding of a material breach of legal and enforceable covenants and further would make appropriate and necessary injunctive relief.  Temporal and geographic restrictions akin to those at issue here have been held enforceable by Kentucky courts.  *See, e.g., Hammons v. Big Sandy Claims Service, Inc.*, 567 S.W.2d 313 (Ky. App. 1978) (upholding 200-mile radius); *Davey Tree Expert Co. v. Ackelbein*, 233 Ky. 115, 25 S.W.2d 62 (1930) (upholding 100-mile radius); *Borg-Warner Protective Services v. Guardsmark, Inc.*, 964 F. Supp. 495 (E. D. Ky. 1996) (one-year restriction at any site where employee had provided services in preceding 12 months enforced); *Lareau v. O'Nan*, 355 S.W. 2d 679 (Ky. 1962) (upholding five-year term against doctor from competing in same community after termination of employment with

restrictive covenants reasonable in duration and geographic scope and ancillary to the sale of a

business. *See, e.g., Johnson v. Stumbo*, 126 S.W.2d 165 (Ky. Ct. App. 1938); *Ireland v. Craggs*, 56

F.2d 785 (5th Cir. 1932).

As to the reasonableness of the duration of the restrictive covenants at issue here, numerous

cases have upheld a five-year noncompetition covenant ancillary to the sale of a business. *See, e.g.,*

*Martin v. Ratliff Furniture* Company, 264 S.W. 2d 273 (Ky. 1954); *Easley v. Sky, Inc.*, 689 S.W. 2d

356 (Ct. App. Ark. 1985) (citing cases). In addition, a five-year term is within the range of

reasonableness under Florida's applicable statutory provisions for restrictive covenants ancillary to

the sale of a business.[4/]

With respect to the geographic scope of the Noncompetition Agreement, *i.e.*, the State of

Florida and the Charlotte and Atlanta metropolitan areas, that geographic scope also is reasonable

under the circumstances of this case, as it is limited to the regions in which the purchased business,

LDAR, engaged in its business activities and is ancillary to a contractual agreement. *See Fletcher*

---

clinic).
    Moreover, both Florida law and the decisions of Kentucky courts provide for modification of the provisions found unreasonable to impose what they believe are reasonable time and scope restrictions, rather than invalidation of the restrictive covenants. *See Hodges v. Todd*, 698 S.W.2d 317 (Ky. App. 1985) (changing unspecified geographic scope to a reasonable one); *Ceresia v. Mitchell*, 242 S.W.2d 359 (Ky. 1951) (same as to temporal scope); *Santana Product Co. v. Korff*, 573 So.2d 1027, 1028 (Fla. 2d DCA 1991); § 542.335, Fla. Stat. In sum, the outcome on this motion mandated by law is identical whether the law found applicable is that of Kentucky or Florida.

[4/]The statute provides:
    (d) In determining the reasonableness in time of a postterm restrictive covenant not predicated upon the protection of trade secrets, a court shall apply the following rebuttable presumptions:...
    3. In the case of a restrictive covenant sought to be enforced against the seller of all or a part of:
        a. The assets of a business or professional practice, or
        b. The shares of a corporation, or
        c. A partnership interest, or
        d. A limited liability company membership, or
        e. An equity interest, of any other type, in a business or professional practice,
a court shall presume reasonable in time any restraint 3 years or less in duration and shall presume unreasonable in time any restraint more than 7 years in duration.

*J. Herdon, Jr. v. The Eli Witt Co.*, 420 So. 2d 920 (1ˢᵗ DCA 1982)(upholding five year/three-state - Florida, Georgia, Alabama - noncompetition covenant ancillary to settlement agreement). The acquired business of LDAR had numerous branch offices throughout the state of Florida from which it could reasonably be expected to service neighboring locations.

Moreover, Ready Staffing was entitled to bargain with the sellers for a statewide restriction on the reasonable expectation of expanding its business, so as to protect the goodwill it acquired from LDAR. Thus the U.S. Court of Appeals for the Sixth Circuit (which includes Kentucky, the jurisdiction whose law was agreed by the parties to apply to disputes concerning the Noncompetition Agreement and thus which the parties had a reasonable expectation would apply in interpreting the reasonableness of that agreement) has repeatedly recognized by application of fundamental equitable principles that geographic restrictions may include anticipated or bargained-for expansion beyond the geographic scope of the business at the time it is acquired:

> With respect to the territory to which the restriction should apply, the rule has always been that it might extend to the limits where in the plaintiff's trade would be likely to go. The changes which have marked the course of judicial decisions in modern times seem to consist in conforming the application of the rule to the constant development of the facilities of commerce and the enlargement of the avenues of trade.

*Knapp v. S. Jarvis Adams Co.*, 135 F. 1008 (6ᵗʰ Cir. 1905); *see also Prame v. Ferrell*, 166 F. 702 (6ᵗʰ Cir. 1909) (person who purchases a business with the purpose of extending its scope is entitled to bargain with the seller against competition within the territory into which he plans to extend it). A court within the current Eleventh Circuit also long ago recognized and accepted these same principles: As held by a Georgia court, "It seems fair and just, and also conducive to business integrity, that a person who purchases a business, including the good will, with the purpose of extending its scope, is entitled to contract with his vendors against competition from them within the territory into which he designs to extend it." *Hood v. Legg*, 128 S.E. 891 (Ga. 1925).

Finally, both Florida and Kentucky courts have upheld state-wide geographic restrictions incident to the sale of a business where deemed appropriate on the facts. Thus reasonableness has been accorded a noncompetition covenant under the facts of the case, in an agreement by certain

stockholders ancillary to the sale of their stock, not to engage in their business throughout the State of Florida for the duration specified. *Ireland v. Craggs*, 56 F.2d 785 (5th Cir. 1932).[5/]  In Kentucky, the courts have long rejected a rule that a state-wide restriction was invalid in favor of a rule of reasonableness. *See Kochenrath v. Christman*, 203 S.W. 738 (Ky. 1918) (upholding state-wide geographic restriction). According to principles of reasonableness, therefore, the geographic restrictions at issue here should be enforced.

In addition, under Florida law applicable to restrictive covenants entered into after July 1, 1996, noncompetition covenants will be enforced if their restrictions are reasonable, and if they protect legitimate business interests, and if the restrictions are necessary to protecting those interests. The terms of the applicable Florida Statute, § 542.335, Fla. Stat., are satisfied and the Noncompetition Agreement should be enforced by this Court on that basis as well.[6/]   More

---

[5/]The court in *Ireland* stated:
> There is no Florida statute which denounces as illegal contracts like the one pleaded; there are no decisions of its courts which do so. On the other hand, the courts of Florida liberally uphold the view that "parties sui juris may ...make such contracts as suit their respective conveniences and necessities and will be bound bu such contracts in so far as they are not prohibited by law; that, provided they are willing to pay the piper, they may call their own tune....

*Id.* at 787 (internal citations omitted).

[6/]The statute provides in pertinent part:
> 542.335.  Valid restraints of trade or commerce
> (1) Notwithstanding s. 542.18 and subsection (2), enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited.  In any action concerning enforcement of a restrictive covenant:
> (a) A court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought.
> (b) the person seeking enforcement fo a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant.  The term "legitimate business interest" includes, but is not limited to:
> 1.  Trade secrets, as defined in s. 688.002(4).
> 2.  Valuable confidential business or professional information that otherwise does not qualify as trade secrets.
> 3.  Substantial relationships with specific prospective ro existing customers, patients, or clients.
> 4.  Customer, patient, or client goodwill associated with:
> a.  An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress";
> b.  A specific geographic location; or

-10-

specifically, the restrictive covenants are set forth in a writing signed by Defendant Montanaro; legitimate business interested identified within the statute have been pled and established through competent evidence attached to this Memorandum of Law; and the contractual restraints are shown to be reasonably necessary to protect Ready Staffing.   Where these statutory requirements are satisfied, and violation of the restrictive covenant is shown as it has been here, a presumption of irreparable injury exists and injunctive relief is an appropriate and necessary remedy under Florida law.[2/]

It is irrelevant to the enforceability of the Noncompetition Agreement ancillary to the asset purchase that Defendant Montanaro also entered into an employment agreement with the purchaser of the business that contained restrictive covenants.  A Florida court has already considered such a circumstance, and specifically found that the existence and/or nonenforceability of an employment agreement with restrictive covenants did not bar enforcement of a contemporaneous noncompetition covenant entered  into by the same individual ancillary to the sale of a business.  *Browning-Ferris Industries of Florida, Inc. v. Manzella*, 694 So. 2d 110 (4th DCA 1997).   In finding the noncompetition agreement valid and enforceable that was ancillary to the asset purchase, even

---

c. A specific marketing or trade area.
5. Extraordinary or specialized training.
Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable.
(c) A person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction.  If a person seeking enforcement of the restrictive covenant establishes prima facie that the restraint is reasonably necessary, the person opposing enforcement has the burden of establishing that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests.  If a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests.

[2/] The statute provides in subsection 1(j) that "A court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions.  The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant....."

though the employment agreement entered at the same time was unenforceable due to a litigation settlement that concerned that agreement, the court stated:

> Manzella executed two different noncompete agreements. The first was between Manzella and IWS and provided for a five year noncompete period as an essential consideration of the sale between Seacoast, owned by Manzella, and IWS. The second noncompete agreement was between [IWS's parent] and Manzella for one year [in an employment agreement executed at the same time as the asset purchase agreement]....The asset purchase noncompete agreement did not depend on employment but instead was part of the purchase of the goodwill of Manzella's business.
>
> ....BFI was attempting to enforce the noncompete agreement which its subsidiary had purchased and paid handsomely for in connection with the sale of assets of Seacoast. The asset sale noncompete agreement was for a period of five years. Obviously, the purpose of such an agreement was to protect the value of the business just purchased from the potential loss of value if the selling owner decided to reestablish a competing business and drain customers away.

The court thus concluded that the two noncompetition agreements were not interrelated and the unenforceability of one did not bar enforcement of the other. *Id.* at 112. Similarly in this case, the fact that Defendant Montanaro also had an employment agreement with noncompetition covenants does not in any way bar Plaintiff from enforcing the Noncompetition Agreement ancillary to the sale of LDAR through this action.

In sum, where, as here, the Noncompetition Agreement is reasonable on its face, the burden of establishing unreasonableness falls solely on the Defendants. § 542.335(1)(c). In view of the *prima facie* showing of reasonableness, the Noncompetition Agreement is presumptively enforceable. In consequence, a preliminary injunction should issue.

### B.   The No-solicitation and non-competition clauses of Loughrey's Employment Agreement are Enforceable Pursuant to law and Fla. Stat. § 542.335(1996).

Because Loughrey's Employment Agreement was entered into after July 1, 1996, Florida Statute § 542.335 is the applicable Florida statute. Its terms are satisfied and the noncompetition and nonsolicitation provisions of Loughrey's Employment Agreement therefore should be enforced by this Court. The restrictive covenants are set forth in a writing signed by Loughrey. Legitimate business interested identified within the statute have been pled and established through competent evidence, including substantial relationships with customers McCann, S.R. Maesel, Miller &

-12-

Solomon, Drywall Enterprises, and Mursten Construction, and confidential business information concerning the financial arrangements and customers of Ready Staffing. The contractual restraints are shown to be reasonably necessary to protect Ready Staffing in light of the direct solicitation of important customers of Ready Staffing by Loughrey, for the benefit of Montanaro, Labor Temp and Staffing America. Where these statutory requirements are satisfied, and violation of the restrictive covenant is shown as it has been here, a presumption of irreparable injury exists and a temporary injunction is an appropriate and necessary remedy.[8]

In addition, the geographic scope and duration of the restrictive covenants are reasonable and consistent with terms found enforceable by the Florida courts. Pursuant to the 1996 statute, one- to two-year time limits are within the range of reasonableness for former employees completing with former employers.[9] Case law also has upheld one- to two-year restrictions as reasonable in circumstances substantially similar to this case. Thus in *State Chem. Mfg. Co. v. Lopez*, 642 So. 2d 1127, 1128-29 (Fla. 3d DCA 1994), the state appeals court found there was no basis for the trial court's finding that a two-year noncompetition covenant for a sales manager was an unreasonable temporal term. One- and two-year covenants against competition have also been upheld with respect

---

[8] The statute provides in subsection 1(j) that "A court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions. The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant....."

[9] The statute provides:
   (d) In determining the reasonableness in time for a postterm restrictive covenant not predicated upon the protection of trade secrets, a court shall apply the following rebuttable presumptions:
   1. In the case of a restrictive covenant sought to be enforced against a former employee, agent, or independent contractor, and not associated with the sale of all or a part of:
      a. The assets of a business or professional practice, or
      b. The shares of a corporation, or
      c. A partnership interest, or
      d. A limited liability company membership, or
      e. An equity interest, of any other type, in a business or professional practice,
a court shall presume reasonable in time any restraint 6 months or less in duration and shall presume unreasonable in time any restraint more than 2 years in duration.

-13-

to a wholesale distributor, *Sarasota Beverage Co. v. Johnson*, 551 So. 2d 503 (Fla. 2d DCA 1989) (18 months); an office-copying business, *Xerographics, Inc. v. Thomas*, 537 So. 2d 140 (Fla. 2d DCA 1988) (one year); a pest control service branch manager, *Florida Pest Control v. Thomas*, 520 So. 2d 669 (Fla. 1st DCA 1988) (two years); and an insurance salesman, *Sentry Ins. v. Dunn*, 411 So. 2d 336 (Fla. 5th DCA 1982), *review denied*, 419 So. 2d 1196 (Fla. 1982) (two years). Thus the one-year time limit for noncompetition and the two-year time limit for nonsolicitation contained in this Agreement are well without the bounds consistently found reasonable by Florida courts for sales employees such as Defendant Loughrey. And as noted, this duration is within the range of reasonableness established by the legislature in § 542.335(1)(d), Fla. Stat. (1996).

The geographic scope is also reasonable, as it is limited to the regions in which Defendant Loughrey principally did business during her employment with Ready Staffing. A 75-mile radius geographic restriction was found reasonable in *Graphic Business Sys. v. Rogge*, 418 So. 2d 1084 (Fla. 2d DCA 1982); A two-county covenant not to compete was similarly found reasonable in *Sarasota Beverage Co.*, 551 So. 2d 503. And in *Capelouto v. Orkin Exterminating Co. of Fla.*, 183 So. 2d 532 (Fla. 1966), a 2-year, 16-county covenant was found reasonable, as the geographic restriction covered only the area in which the former employee had served as a manager. Conversely, under state law, a trial court's refusal to enforce an agreement as to the county in which 85 percent of the employer's business was conducted was held to be reversible error. *Availability, Inc. v. Riley*, 336 So. 2d 668, 670 (Fla. 2d DCA 1976). Thus the 50-mile radius geographic restriction is presumptively reasonable under the case law and should be enforced.

Finally, other U.S. District Court that have recently considered the restrictive covenants at issue here have held them to be valid, reasonable and enforceable as a matter of law. *See* Exhibits "U," "V," "W."

-14-

C. **The Confidentiality Provision of Loughrey's Employment Agreement is Valid and Enforceable.**

The confidentiality provision of Loughrey's Employment Agreement protects against the use or disclosure of confidential information during or after the employee's employment. It, too, is valid and enforceable as a matter of law. Other federal courts have recently found similar provisions enforceable and appropriate for injunctive relief. *See* Exhibits "U," "V," "W."

In regard to customer lists and information, employee lists and information, pricing information and contact personnel at Ready Staffing clients, this confidential information constitutes "trade secrets" under Florida's Uniform Trade Secrets Act, Fla. Stat. § 688. A trade secret consists of information that (1) derives economic value from not being readily ascertainable by others and (2) is the subject of reasonable efforts to maintain its secrecy. *See* § 688.002(4), Fla. Stat.; *see also Braman Motors, Inc. v. Ward*, 479 So. 2d 225 (Fla. 3d DCA 1985) (confidential customer list cultivated over a period of years, and not available to the general public, constitutes sufficient showing of trade secret for preliminary injunction under state law).

The confidential information at issue in this case satisfies this test. The customer information, contract or job order information, and the employee information maintained by Ready Staffing and obtained by Loughrey through her employment with Ready Staffing is information of substantial economic value; developing a pool of contractor customers in need of temporary staffing services of skilled and licensed tradespersons, and developing a pool of skilled and licensed tradesperson employees for placement with these customers, entailed substantial effort and creates substantial value to Ready Staffing in its competitive industry. Pricing, discounting and other financial information of Ready Staffing utilized in negotiating and selling its services to contractor clients, is by its nature confidential and not readily ascertainable by Ready Staffing's competitors or the public. As to maintaining the secrecy of such information, Plaintiff's confidentiality provisions in its employment agreements expressly protect customer information and financial information, and thus demonstrate Ready Staffing's reasonable efforts to maintain the secrecy of such information.

-15-

Moreover, because information used or disclosed by Loughrey is information which she has contractually agreed is confidential and not to be used or disclosed, the remedies available by law should be accorded Ready Staffing with respect to such information.[10]  Even if certain of the information is found not to constitute "trade secrets", the parties nonetheless can agree that it is "confidential" between themselves, thus allowing the employer to protect itself beyond the parameters of the Trade Secrets law.  Such contractual obligations are enforceable.  *See Office Mates 5, North Shore, Inc. v. Hazen*, 599 N.E.2d 1072, 1084 (Ill. App. Ct. 1992); *Inland Rubber Corp. v. Helman*, 237 So. 2d 291, 295 (Fla. 1st DCA 1970).

In consequence, Plaintiff is entitled to a remedy under the terms of Loughrey's Employment Agreement, and also under the FUTSA, including a temporary restraining order.

**D.    Defendants have tortiously interfered with Plaintiff's business relations.**

Florida law recognizes the torts of interference with business relations.  A showing of an intentional and unjustified interference with an existing business relationship which causes damage to the plaintiff establishes a prima facie case, and the burden then shifts to the defendant to justify that interference.

Defendants have interfered with business relations of Ready Staffing.  Labor Temp and Staffing America is vicariously liable for the actions of their agents and employees Montanaro and Loughrey, and have interfered with Ready Staffing's business relationships with significant contractor customers.

**PLAINTIFF MEETS THE REQUIREMENTS FOR
OBTAINING A TEMPORARY RESTRAINING ORDER**

The U.S. Court of Appeals for the Eleventh Circuit has established general prerequisites that must be met in order for a preliminary injunction to be granted: (1) a substantial likelihood that the movants will ultimately prevail on the merits; (2) that they will suffer irreparable injury

---

[10] Subsection (1)(e) of § 542.335 provides that any restraint of 5 years or less is presumed reasonable for the protection of trade secrets.

-16-

if the injunction is not issued; (3) that the threatened injury to the movants outweighs the potential harm to the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. *Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555, 1561 (11th Cir. 1989). The elements for a temporary restraining order are essentially the same, except that "[t]he motion must be supported by allegations...that such [irreparable] injury is so imminent that notice and hearing on the application for preliminary injunction is impractical if not impossible." *See* M.D. Fla.. L.R. 4.05(b)(2). As shown below, this case meets all of these standards for the issuance of a temporary restraining order and, thereafter, a preliminary injunction.

**a.      Irreparable injury is so imminent that notice and hearing on preliminary injunction application is impractical if not impossible**

Despite the plain terms of Loughrey's Employment Agreement and Montanaro's Noncompetition Agreement, the Defendants have solicited and obtained Ready Staffing employees and customers. As demonstrated by evidence before the Court, Defendants have already utilized confidential information of Ready Staffing to solicit its customers McCann, S.R. Maesel, Drywall Enterprises, Miller & Solomon, Mursten Construction and others, and to solicit and obtain the employment of temporary employees of Ready Staffing. In consequence, the delay that would be occasioned by notice and hearing on the application for preliminary injunction would give rise to irreparable injury because of the imminence of harm, and a temporary restraining order should therefore issue.

**b.      Plaintiff can show a substantial likelihood of winning on the merits.**

Success on the merits of Plaintiff's claims is substantially likely for the reasons stated above, and predicated upon the competent evidence before the Court attached to this Memorandum.

**c.      The Plaintiff will suffer irreparable and substantial injury to its property and business unless a temporary restraining order is issued.**

Irreparable harm can be presumed and need not be alleged or proved in a case involving wrongful interference with a business relationship. *See Unistar Corp. v. Child*, 415 So. 2d 733

-17-

(3d DCA 1982), and cases cited therein. Thus if the Court finds that Plaintiff has established a *prima facie* case that Defendants have interfered with business relations of Ready Staffing, irreparable injury should be presumed.

Similarly, pursuant to § 542.335, irreparable injury will be presumed where, as here, the requirements of the statute have been met. *See also  Sun Elastic Corp. v. O.B. Indus.*, 603 So. 2d 516, 517 n.3 (Fla. 3d DCA. 1992) (As to irreparable injury, such injury will be presumed with respect to trade secrets, customer lists, and solicitation of employer customers). The Court need not rely on this presumption alone, however. With respect to the use of confidential customer information, the evidence shows such information has actually been used to cause injury to Ready Staffing and thus a Temporary Restraining Order should issue. The evidence shows that Defendants have contacted and solicited Ready Staffing customers, including soliciting those customers on their worksites where Ready Staffing employees were engaged in work.

Moreover, "irreparable injury may be presumed upon the breach of a valid covenant not to compete." *Capraro v.Lanier Business Prods., Inc.*, 466 So. 2d 212, 213 (Fla. 1985). Where the necessary elements are shown, as noted above, § 542.335 will also presume irreparable injury from violation of a noncompetition restrictive covenant.

As to the substantial nature of such injury, however, and the inadequacy of any remedy at law, the nature of unlawful competition necessarily results in injury to an employer's good will and business reputation which makes an injunction that only effective remedy. As stated in *Jewett Orthopaedic Clinic, P.A. v. White*, 629 So. 2d 922, 927 (Fla. 5th DCA 1993):

> The requirement that the injury be "irreparable" should not present a difficult problem. The question of whether the injury is "irreparable" turns on whether there is an adequate legal remedy available. 4 Pomeroy, Equity Jurisprudence § 1343 (5th Ed. Symons, 1941).*Irreparable* injury means, in essence, that injunction is the only practical mode of enforcement. A negative covenant, where one party promises that he will *not* do certain things, is an apt example. Id. at 941-42. The supreme court observed in Miller Mechanical that certain types of contractual covenants, like covenants not to compete, by their nature lend themselves principally to enforcement by injunction because of the difficulty of arriving at a dollar figure for the actual damage done as the result of the breach. 300 So. 2d at 12. The 1990 amendment created no new proof problems on the issue of irreparableness.

-18-

(Emphasis in original).  The point was made similarly in the Restatement of Contracts.  "[T]he breach of a covenant not to compete may cause the loss of customers of an unascertainable number or importance." *Restatement (Second) of Contracts* § 360, comment b, at 172 (1982). The adequacy of remedies at law depends upon the availability of damage awards.  However, "[d]amages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." *Id.*, § 352 at 144.  *See also Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (upholding a district court's issuance of a preliminary injunction due to the inadequacy of monetary damages as compensation for the loss of customers and goodwill.)

Because there can be no "reasonable certainty" of the lost income of Ready Staffing's business as a result of Defendants' activities, Ready Staffing cannot recover that value in an action at law.  However, the effort to damage Ready Staffing's customer good will has already been shown, by the undercutting of Ready Staffing financial arrangements with Drywall Enterprises.

If Defendants are allowed to continue to compete with Ready Staffing, Ready Staffing will suffer loss for which it will have no meaningful recourse in the courts.  Defendants's conduct, in the face of Loughrey's Employment Agreement and Montanaro's Noncompetition Agreement, indicates the Defendants persist in their wrongful activity unless restrained and enjoined by this Court.

### d.   The harm to Plaintiff from Defendants wrongful activity outweighs the harm resulting to Defendants from the granting of equitable relief.

The Plaintiff seeks equitable relief so that it may conduct its business.  Despite being aware of their obligations under their Agreements, Loughrey and Montanaro persist in their wrongful behavior – conduct for which Labor Temp and Staffing America are vicariously liable. In addition, by their use of confidential information obtained by Loughrey and by their solicitation of customers and employees as prohibited by the Agreements at issue, Labor Temp and Staffing America through their agents have knowingly tortiously interfered with these

-19-

Agreements and with the customer relations of Ready Staffing.  Granting Plaintiff relief will do no more than compel Defendants to live up to the terms of the Agreements and to otherwise abide by law.  Such relief, then, would only restore the *status quo* and in no way harm the Defendants.

    e.    **<u>Granting equitable relief would not be adverse to the public interest</u>.**

The public interest will not be harmed by the outcome of this motion because the public's enjoyment of temporary staffing services does not depend upon who provides those services.  Moreover, by its passage of the Uniform Trade Secrets Act, the Florida legislature established as an important public policy in this state that competition is not waged by unfair or duplicitous means where the devious may be rewarded at the expense of the honest or even more efficient supplier of goods or services.   Granting equitable relief also will promote the transferability of property and thus enhance competition. *See Business Records Corp, supra.*

**<u>CONCLUSION</u>**

On the basis of the foregoing legal principles and the facts of this case, Plaintiff respectfully requests that the relief sought be granted by this Court.

Date: September <u>6</u>, 2001.

                Respectfully submitted,

                John N. Muratides
                Florida Bar No. 332615
                Darrin J. Quam
                Florida Bar No. 995551
                STEARNS WEAVER MILLER WEISSLER
                  ALHADEFF & SITTERSON, P.A.
                401 E. Jackson Street, Suite 2200
                Post Office Box 3299
                Tampa, Florida 33601
                Telephone: (813) 223-4800
                Facsimile: (813) 222-5089
                Counsel for Plaintiff

-20-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by regular U.S. mail to Labor Temp USA, Inc., and to John T. Montanaro, 447 South Cypress Road, Pompano Beach, Florida 33060-7135, this 6th day of September, 2001.

_____
Attorney

I:\W-LIT\11838\004\tro-memo.wpd